**Howard M. LAWN, Plaintiff,**

**v.**

**Leonard L. FRANKLIN et al., Defendants.**

**No. 71 Civ. 2434.**

United States District Court, S. D. New York.

June 24, 1971.

Surrey, Karasik, Greene & Seham, New York City, for plaintiff; Carl F. Goodman, Loyd Starrett, of counsel.

Webster, Sheffield, Fleischmann, Hitchcock & Brookfield, New York City, for defendants; Donald J. Cohn, Michael B. Mukasey, New York City, of counsel.

GURFEIN, District Judge.

This is a motion by the plaintiff for an order compelling arbitration under the Federal Arbitration Act (9 U.S.C. Section 4). The defendants oppose the motion on two grounds: (1) that the existence of a prior action in the United States District Court for the Western District of Texas (Leonard Franklin, et al. v. Howard M. Lawn, A 71 Civ. Action No. 52) between the same parties and posing the same issues, requires this Court to deny plaintiff's motion or to stay the Texas action; and (2) that the service of process made upon defendants Louis J. Reicher and The Sacred Heart Parish, Inc. was insufficient to bring them within the jurisdiction of this Court.

The matter involves the entrepreneurship of defendant Bishop Reicher, the Bishop of Austin, Texas. Bishop Reicher on behalf of his Parish engaged in extensive business transactions with the plaintiff Lawn. It appears to be undisputed that Lawn acted as a fiscal agent for Bishop Reicher and that their joint business consisted of the acquisition of a number of enterprises in various parts of the United States. Apparently Lawn would acquire for the Bishop the tangible assets of each enterprise, that is the real estate and/or personal property used in the business, and Lawn would acquire the going business for himself. After a typical acquisition Lawn would own an operating corporation which leased or rented the tangible assets from the Bishop or a corporation (such as defendant The Sacred Heart Parish, Inc.) controlled by him.

In 1967 the Bishop and Lawn came to a parting of the ways, as a result of which a final agreement, the "escrow agreement" dated November 27, 1967, was entered into. Defendant Franklin, a lawyer who for some years advised Bishop Reicher, became escrow agent. It is this agreement which is the subject of the motion to compel arbitration.

The contract of November 27, 1967 contains an arbitration clause which reads as follows:

"7. In the event of any dispute or controversy hereunder the issues involved shall be settled by arbitration by one arbitrator in the City of New York, N.Y. in accordance with the rules and regulations of the American Arbitration Association and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof."

Controversies arose under this contract and in late April 1971 plaintiff Lawn served demands for arbitration upon each of the defendants in the action pursuant to the American Arbitration Association's procedures. The defendants then started two actions seeking to stay arbitration in New York and Texas State courts and obtained *ex parte* temporary restraining orders against the plaintiff which, however, are no longer in effect. Defendants' principal claim in those actions was that the arbitration clause is invalid under Texas law and that arbitration should be stayed for various alleged reasons of convenience. Lawn removed the defendants' New York action to this Court on May 11 (71 Civ. 2108) on the basis of the diversity of citizenship. 28 U.S.C. Sections 1332, 1441. Thereafter the defendants who were the plaintiffs in the removed action filed a voluntary dismissal of that action. Lawn, appearing specially, on May 28, removed the Texas State Court case which had been commenced on May 5, to the United States District Court for the Western District of Texas. That is the prior action pending. Lawn then started the present proceeding in which he seeks an order under 9 U.S.C. Section 4 compelling the defendants to arbitrate. There is no claim that the defendants did not sign the contract under which arbitration is sought or denial that they have failed to arbitrate pursuant to the demand.

The question arises as to whether the present motion to compel arbitration should be denied or held in abeyance pending the determination of the prior action in the United States District Court for the Western District of Texas. The mere priority of an action in another Federal District does not oust the Court of power to determine which is the better forum. Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200. In this case the Federal Arbitration Act suggests that the proper venue lies in the Southern District. 9 U.S.C. Section 4 provides that when an order compelling arbitration is sought.

"The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration * * * *The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.*" (emphasis added)

This is the only district in which such a petition has been filed. Moreover, the arbitration clause in suit provides for the arbitration to be held in the City of New York. Although the statute appears to imply that the hearing and proceedings follow the District in which the petition for an order directing such arbitration is filed, the converse would seem to follow as well. The proper District within which the petition for such order should be filed is the District where the "proceedings" by virtue of the contract of the parties are to take place. Necchi Sewing Machine Sales Corp. v. Sewline Co., 194 F.Supp. 602, 604 (S.D.N.Y.1960). See China Union Lines v. Steamship Co., 136 F. Supp. 597 (S.D.N.Y.1955). The arbitration—"the proceeding,"—if it is to take place at all, *must* take place in New York. The submission to arbitration in New York in itself waives any objection to venue. Farr & Co. v. CIA Intercontinental, 243 F.2d 342 (2d Cir. 1957);

Necchi Sewing Machine Sales Corp. v. Sewline Co., *supra.*

█ Accordingly, in order for a judicial control of the arbitration to be effective the proper forum appears, in any event, to be the Southern District of New York. For this reason, the Court will order the arbitration in New York to proceed, particularly since the parties themselves in providing for arbitration in New York established that New York was a convenient place.

█ The second question raised relates to the alleged lack of service of process on the defendants Reicher and Sacred Heart. Defendant Franklin was personally served in Texas with the summons and petition as well as by mail. The Bishop and Sacred Heart were served by registered mail with the demand for arbitration, but the petition for an order compelling arbitration and the complaint were served upon them by ordinary mail, not "by registered or certified mail, return receipt requested." The defendants Reicher and Sacred Heart, accordingly, claim that they have not been properly served. There is a short answer. Although under Rule 4(d) (7) of the Federal Rules of Civil Procedure the summons and complaint should be served in the manner prescribed by the law of the State in which the District Court is held, and although the New York Civil Practice Law and Rules, Section 7503(c) provides for service of such a notice "by registered or certified mail, return receipt requested" that section does not apply in this case. Here by agreeing to arbitrate in New York the defendants have submitted to the jurisdiction of the Court. Hamilton Life Ins. Co. of New York v. Republic National Life Ins. Co., 408 F.2d 606, 612–613 (2d Cir. 1969). Where there is advance consent to the jurisdiction by contract the service of process may be made by any method consistent with due process. *Hamilton Life, supra.* See also Petrol Shipping Corp. v. Kingdom of Greece, 360 F.2d 103, 107 (2d Cir.

1966); cert. den. 385 U.S. 931, 87 S.Ct. 291, 17 L.Ed.2d 213. There is no question that the service by mail actually reached the defendants. That is sufficient for due process. Moreover, the parties specifically agreed that the arbitration be "in accordance with the rules and regulations of the American Arbitration Association." Those rules (39b) permit service by mail, "provided that reasonable opportunity to be heard with regard thereto has been granted such party."

█ One other question is raised peripherally [1] and that is that the arbitration clause is invalid because it was not made in conformity with the Texas statute (Art. 224 of the Texas General Arbitration Act, Acts 1965, 59th Leg., p. 1593, c. 689, Section 1). Under that statute an arbitration provision in a written agreement concluded upon the advice of counsel seems to require the signature of such counsel as "evidence." Although Franklin signed the contract as escrow agent he did not sign as Bishop Reicher's counsel. The Bishop denies that Franklin was acting as his counsel at that particular time. It is unnecessary, however, to determine this question of fact since the State statute cannot in any event prevail over the Federal Arbitration Act. That Act created Federal substantive law and the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) is not applicable. Robert Lawrence Co. v. Devonshire Fabrics Inc., 271 F.2d 402, 409 (2d Cir. 1959), cert. dism. 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

█ The only limitation upon jurisdiction, assuming diversity of citizenship or a proper Federal question, arises if the contract does not affect interstate commerce or maritime affairs. The contract in suit clearly relates to interstate commerce. The recital of the methods of business jointly conducted by the plaintiff and the defendants as well as the far flung and interstate nature of the enterprises involved sufficiently es-

───

1. Defendants assert they wish to raise this issue in Texas.

tablishes that the contract relating to these various entities and their activities involves interstate commerce. See Prima Paint Corp. v. Flood and Conklin, 388 U.S. 395, 401, 87 S.Ct. 1801, 18 L. Ed.2d 1270 (1967).[2]

Accordingly, the motion to compel arbitration is granted.

Settle order on notice.

2. The parties to the contract were three Texas residents (the defendants) and one New Jersey resident doing business in New York (the plaintiff). Its first paragraph provides for return to a New York corporation of stock owned by a Texas party. Its second paragraph provides for the assumption of mortgages given on New York land to a Texas party in order to meet obligations owed by the Texas party to entities in Connecticut and Massachusetts. Its third paragraph concerns the assignment by plaintiff Lawn to a Texas party of certain rights with respect to a Florida corporation. Its fourth paragraph concerns the division between Lawn and Texas parties of proceeds from five other enterprises headquartered in Florida, Virginia, Massachusetts and Rhode Island, Washington and New York and leasing assets from a Texas party. These six enterprises which are the subject matter of the third and fourth paragraphs of the arbitration contract were themselves extensively engaged in interstate commerce (Lawn Affd. Paras. 2, 4).